MEYER WILSON CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (SBN 258560)
mboyle@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile:  (614) 224-6066

LEVIN LAW, P.A.
Brian Levin (*pro hac vice* to be filed)
2665 South Bayshore Drive, PH2b
Miami, FL 33133
(305) 402-9050
(305) 676-4443
brian@levinlawpa.com

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STAR GHANAAT and VEDANT THAKKAR, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NUMERADE LABS, INC. d/b/a NUMERADE,<br><br>Defendant. | Case No. 3:23-cv-833<br><br>**Class Action Complaint**<br><br>**Demand for Jury Trial** |

## I.    INTRODUCTION

1.    This case arises from Defendant Numerade Labs, Inc.'s ("Numerade" or "Defendant") surreptitious disclosure of its subscribers' personally identifying information in violation of the Video Privacy Protection Act (the "VPPA"), 18 U.S.C. § 2710.

2.    Specifically, Numerade uses a "Pixel" tracking cookie to disclose to Meta Platforms, Inc. ("Meta," formerly known as Facebook ("Facebook")) a record of its digital subscribers' identities side by side with the specific videos its digital subscribers requested or obtained. Numerade does so without their "informed, written consent." *Id.* § 2710(b)(2)(B).

3.    Plaintiffs Star Ghanaat and Vedant Thakkar ("Plaintiffs") are victims of Numerade's misconduct. Numerade disclosed to Facebook Plaintiffs' personally identifiable information, including

1
**Class Action Complaint**

their Facebook ID ("FID"), along with the video title and the video's URL identifying each video Plaintiffs requested or obtained (together, "Personal Viewing Information"). Plaintiffs bring this case as a class action, seeking damages and equitable relief on behalf of herself and all others similarly situated.

## II. PARTIES

4. Plaintiff Star Ghanaat ("Ghanaat") was at all materials times a subscriber to Numerade who resides in Concord, California.

5. Plaintiff Vedant Thakkar ("Thakkar") was at all material times a subscriber to Numerade who resides in Sioux Falls, South Dakota.

6. Defendant Numerade Labs, Inc., d/b/a Numerade is a Delaware corporation with its principal place of business in Pasadena, California. Its headquarters is located at 1155 Rexford Avenue, Pasadena, California 91107. Defendant owns and publishes www.numerade.com, which is an educational technology website that offers subscribers the opportunity to request and view pre-recorded video courses, notes and exams, and test preparation for science, technology, engineering, and mathematics topics. Numerade offers users of its website the option to create an account and/or purchase a subscription.

## III. JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Numerade because it has its principal place of business in California.

8. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this Court because Numerade resides in this district and a substantial part of the events and omissions giving rise to the claim occurred in this district. 28 U.S.C. § 1391(b)(1)–(2). Numerade knowingly contracted with Plaintiff Ghanaat, a resident of this district, and its actions foreseeably injured him in this district. Numerade systematically serves the market in this district. The claims in this action arise directly from, and are closely related to, Numerade's contacts with this district. If this district were a state, it would have personal jurisdiction over Numerade. *Id.* § 1391(d).

## IV. FACTUAL ALLEGATIONS

### A. Background of the VPPA

10. The VPPA generally prohibits the knowing disclosure of information which identifies a consumer as having requested or obtained specific video materials or services. 18 U.S.C. § 2710(b)(1).

11. Under the statute, the Court may award actual damages (but not less than liquidated damages of $2,500.00 per violation), punitive damages, equitable relief, reasonable attorneys' fees, and other reasonably incurred litigation costs. *Id.* § 2710(c)(2).

12. The VPPA was initially passed in 1988 to protect the privacy of individuals' and their families' video rental, purchase, and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

13. Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials. As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." *Id*.

14. In proposing the Video and Library Privacy Protection Act (later codified as the VPPA), Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own homes. And it protects the selection of books that we choose to read." 134 Cong. Rec. S5399 (May 10, 1988). Thus, the personal nature of such information and the need to protect it from disclosure inspired the statute: "These activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.*

15. These statements rang true in 1988 when Congress passed the VPPA, and even more so today, in the modern era of data mining and online video content in which most Americans partake.

3
Class Action Complaint

During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[1]

16. In this case, Defendant chose to deprive Plaintiffs and class members of their rights under the VPPA by systematically disclosing their Personal Viewing Information to Facebook.

B. **Numerade embedded the Pixel on its websites, thereby knowingly disclosing its subscribers' personal viewing information to Facebook.**

17. Numerade intentionally deploys the "Meta Pixel" or "Pixel" on its website to send subscribers' personally identifiable information to Facebook.

1. **The Meta Pixel Tracker**

18. Facebook introduced its Pixel tracking tool in 2013 to allow online businesses like Numerade to track the actions of their customers on their respective websites and to build detailed, valuable profiles about them.[2] Once activated, the Meta Pixel "tracks the people and type of actions they take";[3] including each page users' visit, what buttons they click, as well as specific information that users input into a website.[4]

---

[1] *See* Statement of the Honorable Patrick Leahy, United States Senator, January 31, 2012, https://www.judiciary.senate.gov/imo/media/doc/leahy_statement_01_31_12.pdf (last visited February 18, 2023).

[2] Meta for Developers, Meta Pixel, https://developers.facebook.com/docs/meta-pixel/ (last visited February 23, 2023).

[3] Meta, Retargeting, https://www.facebook.com/business/goals/retargeting (last visited February 23, 2023).

[4] Meta, Business Help Center, About Meta Pixel, https://www.facebook.com/business/help/742478679120153?id=1205376682832142 (last visited February 23, 2023).

19. Facebook warns companies installing the Pixel on their websites that the Pixel is a personal identifier because it enables Facebook "to match your website visitors to their respective Facebook User accounts."[5]

20. Once a company like Numerade has installed the Meta Pixel on its website, the Meta Pixel tracks users as they navigate through the website and logs a variety of information, including pages visited, any website "buttons" they click, the specific information entered in forms (including personal information), as well as "optional values" set by the business website.[6]

21. During the installation process, Numerade chooses certain options from a menu of available "events" that track specific user activity on Numerade's website for automatic disclosure to Meta, including personally identifiable information such as a user's name, email, phone number, and as relevant here, the FID, a unique identifier Facebook assigns to each Facebook user. For Numerade's website, Numerade chose to disclose to Facebook its subscribers' unencrypted FIDs within a "c_user cookie."

22. Any ordinary person who has access to this FID can use this identifier to quickly and easily locate, access, and view a user's corresponding Facebook profile, as well as the specific video content the user requested on Numerade's website. One simply needs to log into Facebook and type www.facebook.com/FID/ to identify the user. For example, Mark Zuckerberg's FID is reportedly the number "4," so logging into Facebook and typing www.facebook.com/4 in the web browser retrieves Mark Zuckerberg's Facebook page: www.facebook.com/zuck.

23. Numerade could easily program its website to not disclose this information to Facebook.

---

[5] Meta for Developers, Get Started, https://developers.facebook.com/docs/meta-pixel/get-started (last visited February 23, 2023).

[6] Meta for Developers, Meta Pixel, https://developers.facebook.com/docs/meta-pixel/ (last visited February 23, 2023).

## 2. Numerade uses the Meta Pixel to knowingly disclose digital subscribers' PII from the Numerade website to Facebook.

24. Numerade embedded the Meta Pixel on its website to disclose its subscribers' identities and the videos that each subscriber requests or obtains to Meta. Defendant thus knowingly discloses subscriber information by installing and maintaining the Meta Pixel on its website.



25. In the example above, user "John Roe" is requesting or obtaining Defendant's prerecorded video titled "Orbital Motion – Intro," as part of the physics 101 class on mechanics and gravitation.[7]

---

[7] For purposes of demonstrating in this complaint Numerade's practice of disclosing consumers' personally identifying information, Plaintiffs created and used an exemplary account for "John Roe."

26. Once the user requests or obtains the video, Numerade sends the content name of the video the digital subscriber requested or obtained, the URL, and the digital subscriber's FID to Facebook in a single transmission.

27. The FID is displayed in the "c_user" code. In this example, the code is 100089934521623. The disclosure of the FID is coupled with the title of the video the subscriber requested or obtained, along with the URL for the video:



...
(begin)



**Video Name:**

**Digital Subscriber's FID:**

28.     Any person can specifically identify the user requesting or obtaining the Orbital Motion - Intro video as part of the Physics 101 Numerade course on mechanics and gravitation simply by entering facebook.com/100089934521623 into their search bar. On pressing enter, John Roe's Facebook page automatically appears.



29.     Numerade violates the VPPA by knowingly disclosing subscribers' FIDs, together with the prerecorded video content they requested or obtained, to Facebook.

C.     **Numerade does not obtain consent from its various digital subscribers to disclose their personal viewing information to Meta.**

30.     When opening an account, Defendant does not inform its subscribers that their Personal Viewing Information and FID will be shared with Facebook, and Defendant does not ask its digital subscribers to consent to such information sharing.

31.     As is the case at the time of registration, digital subscribers are not provided with any notification that their Personal Viewing Information is being shared when they log-in to their Numerade account and request or obtain videos. Defendant also fails to obtain digital subscribers' written consent to collect their Personal Viewing Information "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," as the VPPA requires.

32.     Defendant does not seek or obtain its digital subscribers' consent (in writing or otherwise) before surreptitiously disclosing their Personal Viewing Information to Facebook.

D.     **Plaintiffs' Experience**

33.     Plaintiffs have been subscribers to Numerade at all relevant times. Both Plaintiffs became digital subscribers to Numerade by registering for an account and providing, among other information, their name and email address to Numerade.

**Class Action Complaint**

34. Plaintiff Ghanaat purchased a paid subscription in October 2021 and requested, obtained, and/or watched prerecorded videos on the Numerade website.

35. Plaintiff Thakkar subscribed to Numerade on or about October 7, 2021 and requested, obtained, and/or watched prerecorded videos on the Numerade website.

36. At all times relevant hereto, Plaintiffs had Facebook accounts. During those time periods, Plaintiffs have requested or obtained prerecorded videos on Numerade's website.

37. Numerade disclosed to Facebook Plaintiffs' FIDs coupled with the title of the videos they requested or obtained and the URLs to access those videos.

38. Each time Numerade disclosed Plaintiffs' PII to Facebook, it violated their rights under the VPPA.

39. Plaintiffs have never consented, agreed, authorized, or otherwise permitted Defendant to disclose their Personal Viewing Information to Facebook. Plaintiffs have never been provided any written notice that Defendant discloses its digital subscribers' Personal Viewing Information, or any means of opting out of such disclosures of their Personal Viewing Information. Defendant nonetheless disclosed Plaintiffs' Personal Viewing Information to Facebook.

## V. CLASS ACTION ALLEGATIONS

40. Plaintiffs bring this lawsuit pursuant to Fed. R. Civ. P. 23 on behalf of the following class (the "Class"):

> All persons in the United States who subscribed to Numerade, who requested or obtained video content on Numerade's website, and who used Facebook during the time Meta Pixel was active on the Numerade website.

41. The "Class Period" is from February 24, 2021 to the present.

42. Excluded from the Class are: (a) Numerade and its employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b) class counsel and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

43. *Numerosity.* The Class is so numerous that individual joinder is impracticable. Numerade has at least tens of thousands of subscribers using the Numerade website. On information and belief,

Numerade disclosed the personal viewing information of all of those subscribers to Facebook. The Class therefore contains thousands of Class members—far too many for individual joinder.

44. *Typicality.* Plaintiffs' claims are typical of the Class they seek to represent. Plaintiffs, like all Class members, had their personal viewing information knowingly disclosed to Facebook by Numerade without their informed written consent. Plaintiffs' claims arise out of the same conduct and are based on the same legal theories as those of any absent class members.

45. *Adequacy of Class Representative.* Plaintiffs will fairly and adequately protect the interests of the Class. They are aware of their duties to absent class members and are determined to faithfully discharge their responsibility. Plaintiffs' interests are aligned with and not antagonistic to the interests of the Class.

46. *Adequacy of Counsel.* In addition, Plaintiffs have retained competent counsel with considerable experience in privacy class actions and other complex litigation. Plaintiffs' counsel has done substantial work in identifying and investigating potential claims in this action, have considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class.

47. *Commonality and Predominance.* This case presents numerous questions of law and fact with answers common to the Class that predominate over questions affecting only individual Class members. Those common questions include:

    a. Whether Defendant disclosed Class members' Personal Viewing Information to Facebook;

    b. Whether Defendant's disclosure of Class members' Personal Viewing Information to Facebook was knowing under the VPPA;

    c. Whether the information disclosed to Facebook concerning Class members' Personal Viewing Information constitutes personally-identifiable information under the VPPA; and

    d. Whether Class members are entitled to compensatory damages and equitable relief as a result of Defendant's conduct.

48.     *Superiority and Manageability.* A class action is superior to individual adjudications because joinder of all Class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial system. The amount-in-controversy for each individual Class member is likely relatively small, which reinforces the superiority of representative litigation. As such, a class action presents far fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

49.     *Injunctive Relief.* Plaintiffs also satisfy the requirements for maintaining a class under Rule 23(b)(2). Defendant acted on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

50.     *Particular Issues.* Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

**FRAUDULENT CONCEALMENT AND TOLLING**

51.     The applicable statutes of limitations are tolled by virtue of Defendant's knowing and active concealment of the facts alleged above. Plaintiffs and Class members were ignorant of the information essential to the pursuit of these claims, without any fault or lack of diligence on their own part.

52.     At the time the action was filed, Defendant was under a duty to disclose the true character, quality, and nature of its activities to Plaintiffs and the Class. Defendant is therefore estopped from relying on any statute of limitations.

53.     Defendant's fraudulent concealment is common to the Class.

**CAUSE OF ACTION**

**Count I**

**Violations of the Video Privacy Protection Act,**

**18 U.S.C. § 2710**

54. Plaintiffs incorporate by reference all of the above allegations.

55. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710(b)(1).

56. A "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." *Id.* § 2710(a)(4). Defendant is a "video tape service provider" because it is engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

57. As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiffs and Class members are subscribers to Defendant's service of providing video content. Thus, Plaintiffs and Class members are "consumers" under this definition.

58. As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

59. Numerade knowingly disclosed Plaintiffs' and Class members' PII—specifically, their FIDs and the title and URL of the videos they requested or obtained—to Facebook.

60. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified Plaintiffs and each Class member to Facebook as an individual who requested or obtained Defendant's video content, including the specific video materials requested or obtained on Defendant's website. Indeed, anyone with an FID could identify the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

61. Under the VPPA, "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner." *Id.* § 2710(b)(2)(B). Defendant failed to obtain informed, written consent under this definition.

62. In addition, the VPPA creates an opt-out right for consumers. *Id.* § 2710(2)(B)(iii). It requires video tape service providers like Numerade to also "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." *Id.* Defendant failed to provide an opportunity to opt out as required by the VPPA.

63. Defendant knowingly disclosed Plaintiffs' and Class members' Personal Viewing Information to Facebook. Defendant programmed the Facebook Pixel into its website code, knowing that Facebook would receive video titles and the subscriber's FID when a subscriber requested or obtained a video.

64. By disclosing Plaintiffs' and the Class's Personal Viewing Information, Defendant violated Plaintiffs' and the Class members' statutorily protected right to privacy in their video-watching habits.

65. As a result of the above violations, Defendant is liable to the Plaintiffs and other Class members for actual damages in an amount to be determined at trial or, alternatively, for "liquidated damages" "not less than $2,500" per violation. *Id.* § 2710(c)(2). Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendant in the future. *Id.*

## PRAYER FOR RELIEF

66. Plaintiffs, individually and on behalf of all others similarly situated, hereby request that the Court:

    a.    Certify this case as a class action;

    b.    Appoint Plaintiffs as Class representatives and appoint Plaintiffs' counsel to represent the Class;

  c. Find that Defendant's actions, as described herein, constitute violations of the VPPA;

  d. Award actual damages or liquidated damages in an amount not less than $2,500 for each violation to Plaintiffs and each Class member;

  e. Award punitive damages in an amount to be determined at trial;

  f. Award reasonable attorneys' fees and reimbursement of litigation expenses;

  g. Award Plaintiffs and Class members pre- and post-judgment interest as provided by law;

  h. Enter judgment in favor of Plaintiffs and the Class;

  i. Enjoin Defendant's ongoing misconduct, enter any equitable relief it deems appropriate, and awards restitution in an amount sufficient to disgorge Defendant's ill-gotten gains; and

  j. Enter any other relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

67. Plaintiffs demand a jury trial on all applicable claims.

Dated: February 24, 2023    Respectfully submitted,

By: /s/ *Michael J. Boyle, Jr.*

MEYER WILSON CO., LPA
Matthew R. Wilson (290473)
mwilson@meyerwilson.com
Michael J. Boyle, Jr. (SBN 258560)
mboyle@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

LEVIN LAW, P.A.
Brian Levin (*pro hac vice* to be filed)
2665 South Bayshore Drive, PH2b
Miami, FL 33133
(305) 402-9050
(305) 676-4443
brian@levinlawpa.com

*Counsel for Plaintiff and the Proposed Class*